HOWLAND'S APPEAL.

The debtor's failure to file a schedule of assets and list of creditors within ten days after beginning proceedings of insolvency, or before the first meeting of his creditors, is no ground for discontinuing the proceedings.

APPEAL, from a decree of the judge of probate. Facts found by the court. Howland made an assignment for the benefit of his creditors September 14, 1892. He filed a list of his creditors October 22, stating their residences and the amount of each one's claim, but not the nature and consideration of the claim, nor whether it was secured. Because of this omission, and the fact that the list was not filed within ten days after the beginning of the proceedings, or before the first meeting of his creditors, the judge of probate dismissed the proceedings; and the court at the trial term affirmed the order of dismissal, subject to the appellant's exception.

*Samuel B. Page* and *Smith & Sloane,* for the appellant.

*William F. Westgate* and *Bingham, Mitchell & Batchellor*, for Arthur Knapp, a creditor.

CHASE, J.  By the common law of this state an insolvent debtor
might assign his property to trustees for conversion into money,
and for distribution with or without preference among those of
his creditors who assented to the assignment, upon condition
that he should be discharged from their claims.  *Haven* v. *Rich-
ardson*, 5· N. H. 113.  Such assignments furnished facilities for
committing injustice and fraud, of which parties took advantage.
To remedy the evil, the act of July 5, 1834 (Laws 1834, *c.* 161),
was passed, by which it was enacted that no assignment for the
benefit of creditors should be valid unless it provided for an
equal distribution of the debtor's property among his creditors
according to their respective claims, nor unless the debtor made
oath that he had "placed and assigned, and the true intention of
his assignment was to place in the hands of his assignees, all his
property of every description," not exempt from attachment, to
be thus distributed.  *Meredith Mfg. Company* v. *Smith*, 8 N. H.
347, 348; *Low* v. *Wyman*, 8 N. H. 536, 537; *Barker* v. *Hall*, 13
N. H. 298, 301.  This statute was incorporated into the Revised
Statutes (*c.* 134), and continued in force without change until
1861.  Neither the common law nor this statute required the
filing of a schedule of the debtor's assets or a list of his creditors.
*Haven* v. *Richardson, supra.*  This requirement originated with
the act of July 3, 1861 (Laws 1861, *c.* 2488), which provided,
among other things, that the assignee should, within ten days
after the assignment, file in the office of the register of probate
a schedule of all the property embraced in it, and a list of the
names and residences of the creditors, verified by the oaths of the
debtor and himself (*s.* 1).  The act carefully guarded against a
failure by the assignee to perform the duty for want of informa-
tion, by requiring the debtor to furnish him true information upon
the subject, and subjecting him to liability to punishment if he
refused or neglected to do so (*s.* 7).  There was no express pro-
vision in the act that a failure to perform the duty should defeat
the assignment, nor anything tending to show that such was the
intention of the legislature.

By the act of July 9, 1862 (Laws 1862, *c.* 2594), it was pro-
vided that the assent of creditors to an assignment should be
presumed unless the contrary intent was manifested to the
assignee within thirty days after they were notified of the assign-
ment, and that the actions of assenting creditors should be
discontinued.  See *Fellows* v. *Greenleaf*, 43 N. H. 421; *Frink* v.
*Buss*, 45 N. H. 325.  In *Chamberlain* v. *Perkins*, 51 N. H. 336,
the defendant undertook to avail himself of these provisions to
procure the discontinuance of the action by pleading in bar the
pendency of insolvency proceedings.  The plaintiffs demurred to
the plea because it did not allege that the residences as well as
the names of creditors were stated in the list, and the demurrer
was sustained.  The court (*Bellows*, C. J.) said,—"The plea in

this case is in bar of the further prosecution of the suit, and is based upon the law of July, 1862, *s.* 1, *c.* 2594. . . . Independent of that section the plea could avail nothing; and to enable the debtor to plead it with effect, he must show a substantial compliance with the provisions of the law which were designed to give the creditor the means of judging of the character and validity of the assignment, and consequently of determining whether to give or withhold his assent. These provisions, in respect to filing a schedule and list of creditors with their residences, are of that character; and we cannot hold that anything short of a full compliance with those provisions will be sufficient to justify a presumption of assent so far as to maintain a bar to the further prosecution of the suit." The decision did not go to the extent of holding the assignment void. In effect, it allowed the plaintiffs to dissent from the assignment long after the expiration of thirty days from its execution, and to pursue their remedy against the debtor outside the insolvency proceedings. By this course they could not divert the property in the assignee's possession from assenting creditors, but could reach the surplus remaining after assenting creditors were paid. *Fellows* v. *Greenleaf, supra.*

All the acts referred to were revised upon the enactment of the General Statutes in 1867, and incorporated into *c.* 126. Section 4 of this chapter requires that the schedule of assets shall contain a statement of the estimated value of the property embraced in the assignment and of the incumbrances upon it, and that the list of creditors shall contain a statement of the amount and nature of their respective claims in addition to the particulars required by *s.* 1 of the act of 1861. Section 8 provides that if the assignee shall fail to file a schedule of property and list of creditors in ten days, or a bond in five days, or within such further time as the judge may allow, he shall cease to be assignee; and *s.* 9 provides that whenever a vacancy shall occur in the office of assignee from any cause, the judge shall appoint another upon application of the debtor or any creditor. Failure on the part of the assignee to perform his duty is remedied, not by avoiding the assignment and depriving the debtor and creditors of their rights under it, but by substituting for the delinquent an assignee who will perform the duties of the office.

The law thus far was distinctively an insolvency law. *Rochester Savings Bank* v. *Chick*, 64 N. H. 410. It contained no provision for a discharge of the debtor from his debts without payment in full, nor any provision for involuntary proceedings. The United States bankruptcy act of 1867 was repealed in 1878. After and doubtless because of its repeal, many of its provisions were incorporated into the state insolvency law, rendering it essentially a bankruptcy law. Laws 1885, *c.* 85; Laws 1889, *c.* 96; P. S., *c.* 201; *Barth* v. *Backus*, 140 N. Y. 230. Creditors as

well as the debtor may now begin proceedings, and the debtor may be discharged from certain of his debts. Voluntary proceedings are begun by an assignment to the judge of probate and an assignee to be appointed by him, instead of to an assignee selected by the debtor. However it is made or expressed, it must be construed to convey all the debtor's estate not exempt from attachment. *Dube* v. *Mascoma Fire Insurance Company*, 64 N. H. 527. It avoids all payments and liens on the debtor's property, made within three months, to satisfy or secure previously existing debts (*s.* 26). The property passes immediately into the possession and custody of the court; and the court may proceed to dispose of certain kinds of property, and to collect debts due the estate, without waiting for the appointment of an assignee. All the property of the debtor not exempt from attachment comes under the jurisdiction of the probate court, to be converted into money and distributed among his creditors. The right of creditors to such distribution vests in them immediately on the assignment. *In re Mann*, 32 Minn. 60, 63; *Metcalf* v. *Van Brunt*, 37 Barb. 621, 627.

The provision (*s.* 8) for filing a schedule of assets and a list of creditors is as follows: "The debtor shall, within ten days after the beginning of the proceedings, make, on oath, and file in the office of the register, a schedule of his creditors, stating the place of residence of each, if known, the amount due each, the nature of each debt, the true consideration thereof, and any security given for its payment, and a schedule of all his estate, giving its location and description, and the nature of all incumbrances thereon, with the date, amount, and consideration of each. If, by mistake, accident, or misfortune, the schedules are not furnished within the time above limited, they shall be delivered as soon as may be thereafter, and before the first meeting of the creditors." The object of this section was not to obtain information for notifying creditors of the pendency of the proceedings : that is provided for in *s.* 6;—it was not to secure an inventory of the debtor's estate : that is provided for in *s.* 25;—the provisions of the section are not relied upon for discovering fraud: special and ample provisions for that purpose are made in other parts of the law (*ss.* 15, 19, 26, 27, 40);—but their office, like that of the provisions of *s.* 7 of the act of 1861, is to secure for the assignee and other parties in interest true information concerning the condition of the estate. They are supplemented, at least in involuntary proceedings, by *s.* 50, which provides that the debtor shall be punished if he wilfully omits to furnish the information, or fraudulently furnishes false information. They are incidental rather than essential provisions. Non-compliance with them does not render it impossible to carry into effect the purpose of the law. The assignee and creditors can get the information from other sources, or from the debtor himself, with the aid of *s.* 27, which provides that the debtor,

when required, shall submit to examination on oath, by the assignee or any creditor, " touching any matter which may affect the settlement of his estate in insolvency." There is no provision that a failure to comply with the requirements of the section shall make the assignment invalid and discontinue the proceedings. The modifications of the law, effected by the acts of 1885, 1889, and 1891, do not lessen the weight of this negative evidence. A result of such vital consequence to the debtor, and especially to the creditors, in a bankruptcy proceeding would not be left to inference.

The purpose of the law is "the distribution of the debtor's property proportionately among his creditors, and the discharge of the debtor from further payment, if he shall bring himself within the conditions prescribed for obtaining it." *Batchelder* v. *Batchelder*, 66 N. H. 31, 32. If the proceedings under the assignment are arrested, the purpose is defeated. The creditors lose their rights in the debtor's property, including that portion which has been relieved from liens by the operation of the law. All this may happen without their previous knowledge or assent. If they knew it was likely to happen, they would be powerless to prevent it, however much it might be for their interest to do so. The debtor might, by his wilful or negligent omission to file the schedules, accomplish what he could not do directly by a formal deed revoking the assignment. This is inconsistent with the purpose and theory of such laws; and there is no reason to suppose the legislature attached such meaning to the terms of the statute.

*Exception sustained: decree of probate court reversed.*

CARPENTER, J., did not sit: the others concurred.